## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **PALTALK HOLDINGS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 2:06cv367-DF** |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **MICROSOFT CORP.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## <u>CLAIM CONSTRUCTION ORDER</u>

Before this Court is PalTalk's Corrected Second Opening Claim Construction Brief.  Dkt. No. 82.  Also before the Court are Microsoft's updated response, PalTalk's second reply, and Microsoft's sur-reply.  Dkt. Nos. 80, 83 & 86.  The Court held a hearing on January 17, 2008.  Dkt. Nos. 91 & 94.  After considering the patents, arguments of counsel, and all other relevant pleadings and papers, the Court finds that the claims of the patents-in-suit should be construed as set forth herein.

# TABLE OF CONTENTS

I.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LEGAL PRINCIPLES OF CLAIMS CONSTRUCTION . . . . . . . . . . . . . . . . . . . 1

III.    THE PATENTS-IN-SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.    PRIOR LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    The *HearMe* Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.    Collateral Estoppel does not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    Judicial Estoppel Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    CLAIMS AT ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

VI.    CLAIM CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.    Agreed Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    B.    Disputed Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        (I)    "Aggregating" and "Aggregated . . . . . . . . . . . . . . . . . . . . . . 13
            (1)   The Parties' Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        (ii)    "Aggregating, by said Server in a Time Interval Determined in
                Accordance with a Predefined Criterion, said Payload
                Portions of Said Messages to Create an Aggregated Payload"  . . 21
            (1)   The Parties' Positions  . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        (iii)    "Aggregating Said Payload Portions," And "Aggregated
                Payload"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            (1)   Parties' Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            (2)   Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        (iv)    "Aggregated Message . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            (1)   The Partes' Positions  . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        (v)    "Group Messages" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            (1)   The Parties' Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
        (vi)   "List of Message Groups . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
            (1)   The Parties' Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        (vii)   "Suppressing" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
            (1)   The Parties' Positions . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
            (2)   Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
        (viii)  "Server Message" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
            (1)    The Parties' Positions  . . . . . . . . . . . . . . . . . . . . . . . . . 33
            (2)    Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

(ix)  "Shared Interactive Application"  . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    (1)  The Parties' Positions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    (2)  Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
(x)  "Wherein/whereby said Aggregated/Server Message
    keeps the Shared Interactive Application Operating
    Consistently"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    (1)  The Parties' Positions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    (2)  Construction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

VII.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

<u>**MEMORANDUM AND OPINION**</u>

## I. BACKGROUND

On September 12, 2006, PalTalk Holdings, Inc. ("PalTalk") sued Microsoft Corp. ("Microsoft") for patent infringement relating to United States Patents 5,822,523 (the "'523 Patent"), and 6,226,686 (the "'686 Patent"). Complaint, Dkt. No. 1. Both asserted patents have the same title, which is "Server-group messaging system for interactive applications." Microsoft generally denies all of PalTalk's allegations and further counterclaims for declaratory judgment of non-infringement and invalidity with respect to the asserted patents. Answer, Dkt. No. 19.

## II. LEGAL PRINCIPLES OF CLAIMS CONSTRUCTION

A determination of patent infringement involves two steps. First, the patent claims are construed, and, second, the claims are compared to the allegedly infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc). The legal principles of claim construction were recently reexamined by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*). The Federal Circuit in *Phillips* expressly reaffirmed the principles of claim construction as set forth in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004). Thus, the law of claim construction remains intact. Claim construction is a legal question for the courts. *Markman*, 52 F.3d at 979.

The Court, in accordance with the doctrines of claim construction which it has outlined in the past, construes the claims of the patents-in-suit below. *See Pioneer v.*

*Samsung*, Civ. No. 2:07-cv-170, Dkt. No. 94 at 2-8 (E.D. Tex. filed Mar. 10, 2008) (claim construction order).

## III.  THE PATENTS-IN-SUIT

Originally, the '523 and '686 Patents (hereinafter, collectively "the Patents") were owned by a company named HearMe, which was founded in 1995.  '523 Patent at cover; '686 patent at cover; Dkt. No. 82 at 1.[1]  HearMe developed and sold technology to permit multiple parties to play video games with each other over the Internet. Dkt. No. 82 at 1. PalTalk purchased the Patents from HearMe in 2002, purportedly because of their relevance to PalTalk's video and voice conferencing business.  *Id.* at 2.

The application for the '523 Patent was originally filed with the United States Patent and Trademark Office on February 1, 1996.  '523 Patent at cover.  On July 18, 1997, HearMe filed a continuation application (Application No. 08/896,797) based upon the application of the '523 Patent (Application No. 08/595,323).  '686 Patent at cover. That continuation eventually matured into U.S. Patent No. 6,018,766 (the "'766 Patent"), which is not asserted in this lawsuit.  *Id.*  On September 28, 1999, HearMe filed a second continuation application (Application No. 09/407,371) based upon the application that matured into the '766 Patent.  *Id.*  This second continuation matured in to the '686 Patent. *Id.*  Since the '686 Patent issued in a line of ordinary continuations from the '523 Patent application, the Patents share the same substantive disclosure.

The Court provides the following summary of the Patents without prejudice to or implication upon the parties' positions:  The Patents disclose a system for deploying interactive software applications over a network.  '686 Patent at abstract.  The system operates in a conventional unicast network using conventional network links and unicast

---

[1]  All page numbers from the parties' submissions are hereinafter cited as originally paginated.

routers. *Id.* In operation, the nodes of a unicast network send messages on a one-to-one basis – a node can only send a message to a single other node '523 Patent at 4:14-16 ("As can be seen, each host must send a packet to every other host that it wishes to communicate with in an interactive application."). Unicast networks may be contrasted to multi-cast networks that offer operational ability on a one-to-many basis – one node may send a single message to many other nodes. *Id.* at 4:34-37 ("IP multicasting supports the transmission of a IP datagram to a host group by addressing the datagram to a single destination address.").

The Patents disclose a system generally using several host computers and a central server computer, called a group messaging server ("GMS"). '523 Patent at 8:21-34 ("The present invention relates to facilitating efficient communications between multiple host computers over a conventional wide area communications network to implement an interactive application such as a computer game between multiple players. . . . The invention is comprised of a group messaging server connected to the network that maintains a set of message groups used by the hosts to communicate information between themselves."). Each host is presumably employed by a user that wishes to participate in a shared application, such as a networked game. *Id.* The purpose of a shared application is that there are other users, each employing their own host computer to participate in the shared application. *Id.* The overall group of users sharing an application may be considered a message group[2]. *Id.*

In order to effect application sharing, the hosts in a message group send messages to each other. '523 Patent at 1:66 – 2:1 ("The messages sent between the PCs would

---

[2] This reference to a "message group" is exemplary and not intended to as an alteration or substitution for the parties' agreed definition for this term. For purposes of claim construction and the jury instructions, the term "message group" has been defined more fully below.

contain information that was needed to keep the game consistent between all of the PCs."). The messages are sent via the central server or group messaging server ("GMS"). '523 Patent at 8:29-32 ("The invention is comprised of a group messaging server connected to the network that maintains a set of message groups used by the hosts to communicate information between themselves."). The GMS is aware of the various message groups among the host computers and even may be aware of the shared application. *Id.*; '523 Patent at 27:22-24 ("Another extension to the invention is to define ULP server processes that perform specific application specific processes on the contents of the messages that are received."). Therefore, a host can send a message to the GMS indicating (explicitly or implicitly) a recipient *group* of hosts. *Id.* at abstract ("The hosts send messages containing destination group addresses by unicast to the group messaging servers."). The GMS may then forward the message to each host in the indicated group. *Id.* ("The group messaging server then forwards the message to each of the target hosts."). Thus, by using the GMS, each host may use the unicast network to perform message routing that would otherwise only be available in a multicast network (*ie.*, by using the GMS, a single message is sent to multiple hosts).

The patent discusses that the GMS may be employed to offer other advantages as well. For example, the GMS may aggregate messages received from several hosts and send the aggregation to intended recipients via a single aggregated message. *Id.* ("Rather than simply forward each message to its target hosts, the group messaging server aggregates the contents of each of messages received during a specified time period and then sends an aggregated message to the targeted hosts."). In addition, the GMS may suppress messages so that the source of a particular message does not receive

an "echo" of the message that was sent. '523 Patent at 22:66 – 23:2 (". . . echo suppression . . . means that the host will not receive a copy of its own message to the group either as a single un-aggregated message or a as a payload item in an aggregated message.").

## IV.  PRIOR LITIGATION

### A.  The *HearMe* Litigation

Several years ago, PalTalk's predecessor-in-interest, HearMe, sued a company called Lipstream for infringement of the '523 Patent.  The lawsuit was conducted in the Northern District of California before The Honorable William H. Alsup. *HearMe v. Lipstream Networks, Inc.*, No. C 99-04506 WHA.  During that dispute, the Judge Alsup convened a claim construction hearing on June 20 and 21, 2000. Dkt. No. 80, Ex. H at 3. In addition, Judge Alsup issued a "tentative ruling" after the hearing. Dkt. No. 80, Ex. D. Judge Alsup subsequently accepted more briefing from the parties regarding claim construction and ultimately issued a final claim construction order. Dkt. No. 80, Ex. H.

The *HearMe-Lipstream* case has become an issue in this proceeding for a variety of reasons.  First, some questions have been raised whether Judge Alsup's Order is binding upon this Court. Dkt. No. 80 at  8 ("The doctrines of judicial estoppel, stare decisis, and collateral estoppel preclude PalTalk from taking an inconsistent position in this case with respect to "aggregating." Even if Judge Alsup's order is not binding on this Court as a matter of law, it cannot be ignored.").  Second, Microsoft contends that PalTalk may be bound to statements of its predecessor HearMe. *Id.*  Third, even if not bound, Microsoft urges that this Court should not ignore Judge Alsup's Order. *Id.*

**B.  Collateral Estoppel does not Apply**

Microsoft  also  argues that the doctrines of collateral estoppel and stare decisis apply, even though there was no final judgment in the HearMe case.  *Id*.  To support this proposition, Microsoft argues that PalTalk was fully heard on the claim construction issue and the Court issued two fully-reasoned orders.  Dkt.  No.  80 at 9, *citing RF Delaware v. Pacific Keystone Tech., Inc.*, 326 F.3d 1255 (Fed. Cir. 2003); *Dana v. E.S. Originals, Inc., et al.*, 342 F.3d 1320, 1324 (Fed. Cir. 2003).

In the Fifth Circuit, collateral estoppel applies when: "(1) the   identical  issue was  previously  adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City School Bd.,* 403 F.3d 272, 290 (5th Cir. 2005).  The parties in the HearMe litigation reached a voluntary settlement before a final judgment was entered.  The Court finds that, in this situation, the majority of courts have found that collateral estoppel does not bind the later court to the claim construction of the previous court.  *See RF Delaware*, 326 F.3d at 1261-62 (collateral estoppel did not apply to bind the subsequent case to the claim constructions in orders ruling on summary judgment motions entered in the previous case when the parties had settled before final judgment); *See also Logan v. Hormel Foods Corp.*, No. 6:04-CV-211, 2004 WL 5216126 at *2 (E.D. Tex. Aug. 25, 2004) ("[T]his Court is not bound by Judge Werlein's claim  construction because that case settled prior to final judgment on the merits.") (Davis, J.); *Abbot Diabetes Care Inc. v. Roche Diagnostics Corp.*, 2007  WL 1239220 (N.D.  Cal.  2007); *Kollmorgen Corp. v. Yaskawa Electric Corp.*, 21 Fed. Appx. 893 (W.D. Va. 2001); *Graco Children's Prods, Inc. v. Regalo Int'l*, 77 F. Supp.2d 660, 663 (E.D. Pa. 1999); *but see TM Patents, L.P. v. International*

6

*Business Machines, Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) (collateral estoppel

applied to bar relitigation of claim construction); *Curtiss-Wright Flow Control Corp. v. Z*

*& J Technologies Gmbh*, 2007 WL 5115321 (C.D. Cal. 2007).  Thus, the Court declines

to apply the doctrine to bind this Court to Judge Alsup's claim construction order.

Similarly, the Court finds no grounds for applying the stare decisis doctrine.

Nonetheless, the Court accords due consideration to Judge Alsup's order in the analysis

below.  *See Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702 at *2 (N.D. Tex. 2003) *citing*

*Texas Instruments, Inc. v. Linear Technologies Corp.*, 192 F.  Supp. 2d 580, 589 (E.D.

Tex. 2002) ("While this Court agrees that neither collateral estoppels nor stare decisis

dictate the adoption of the [previous] claim construction on the patent at issue in this

case, this Court finds the [previous] court's determination instructive.").

**C.  Judicial Estoppel Does Not Apply**

Microsoft argues that under the doctrine of judicial estoppel,  PalTalk is bound by

the statements and factual representations made by HearMe. Dkt.  No.  80 at 8-9 *citing*

*Meadows v. Chevron, U.S.A., Inc.,* 782 F.  Supp.  1189, 1193 (E.D. Tex. 1991); *Hardy v.*

*Johns-Manville Sales Corp.*, 681 F.2d 334, 339 (5th Cir. 1982); *Ergo Science, Inc. v.*

*Martin*, 73 F.3d 595, 598 (5th Cir. 1996); *Data Gen..Corp v. Johnson*, 78 F.3d 1556,

1565 (Fed. Cir. 1996).  "The doctrine of judicial estoppel prevents a party from asserting

a position in a legal proceeding that is contrary to a position previously taken in the same

or some earlier proceeding."  *Ergo Science, Inc. v. Martin*, 73 F.3d at 598 ("This doctrine

prevents internal inconsistency, precludes litigants from 'playing fast and loose' with

courts, and prohibits parties from deliberately changing positions based upon the

exigencies of the moment."); *See also Data Gen. Corp. v. Johnson*, 78 F.3d at 1565

("The doctrine of judicial estoppel is that where a party successfully urges a particular

position in a legal proceeding, it is stopped from taking a contrary position in a

subsequent proceeding where its interests have changed.").  It is within the trial court's

discretion to invoke judicial estoppel and preclude an argument.  *SanDisk Corp. v.*

*Memorex Products, Inc.*, 415 F.3d  1278, 1290 (Fed. Cir. 2005) *citing Hamilton v. State*

*Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001).

Although PalTalk was not a  party in the previous litigation, "a nonparty who has

succeeded to a party's interest in property is bound by any prior judgments against that

party." *Hardy v. Johns-Manville Sales   Corp.*, 681 F.2d at 339 *quoting Southwest*

*Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 95 (5th Cir. 1977); *see also id*.

(explaining the rationale that "the nonparty in effect had his day in court").  However,

since Judge Alsup's claim construction order cannot be considered a "final judgment" as

provided above, the Court finds that PalTalk is not bound to HearMe's arguments in the

previous proceeding.

Moreover, even if the Court found privity between PalTalk and HearMe, as

discussed below, PalTalk is not strictly limited to the claim construction  positions taken

by HearMe, as long as the positions advanced by PalTalk  are not "clearly  inconsistent"

with those of HearMe in the previous litigation.  *See SanDisk Corp. v. Memorex*

*Products, Inc.*, 415 F.3d at 1290-91.

## V.  CLAIMS AT ISSUE

The asserted claims discussed herein are as follows: '523 Patent, claims 1, 4, 5, 6

(claim 1 is independent and claims 4, 5 & 6 depend therefrom); and '686 Patent, claims 1,

3, 5, 12,14 & 18 (claims 1, 3, 5, 12 & 18 are independent claims and claim 14 depends

from claim 12). Dkt. No. 53. For reference, each claim is reproduced below.

*'523 Patent, claim 1*. A method for providing group messages to a plurality of host computers connected over a unicast wide area communication network, comprising the steps of:

> providing a group messaging server coupled to said network, said server communicating with said plurality of host computers using said unicast network and maintaining a list of message groups, each message group containing at least one host computer;

> sending, by a plurality of host computers belonging to a first message group, messages to said server via said unicast network, said messages containing a payload portion and a portion for identifying said first message group;

> aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;

> forming an aggregated message using said aggregated payload; and

> transmitting, by said server via said unicast network, said aggregated message to a recipient host computer belonging to said first message group.

*'523 Patent, claim 4*. The method of claim 1 further comprising the step of creating, by one of said plurality of host computers, said first message group by sending a first control message to said server via said unicast network.

*'523 Patent, claim 5*. The method of claim 4 further comprising the step of joining, by some of said plurality of host computers, said first message group by sending control messages via said unicast network to said server specifying said first message group.

*'523 Patent, claim 6*. The method of claim 1 wherein said network is Internet and said server communicates with said plurality of host computers using a session layer protocol.

*'686 Patent, claim 1*. A method for facilitating communications among a plurality of host
computers over a network to implement a shared, interactive application, comprising the steps of:

> (1) receiving a create message from one of the plurality of host computers, wherein said create message specifies a message group to be created;

(2) receiving join messages from a first subset of the plurality of host computers, wherein each of said join messages specifies said message group;

(3) receiving host messages from a second subset of said first subset of the plurality of host computers belonging to said message group, wherein each of said messages contains a payload portion and a portion that is used to identify said message group;

(4) aggregating said payload portions of said host messages received from said second subset of the plurality of host computers to create an aggregated payload;

(5) forming an aggregated message using said aggregated payload; and

(6) transmitting said aggregated message to said first subset of the plurality of host computers belonging to said message group;

wherein said aggregated message keeps the shared, interactive application operating consistently on each of said first subset of the plurality of host computers.

**'686 Patent, claim 3**.  A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:

(1) receiving a create message from one of the plurality of host computers, wherein said create message specifies a message group to be created;

(2) receiving join messages from a first subset of the plurality of host computers, wherein each of said join messages specifies said message group;

(3) receiving host messages from a second subset of said first subset of the plurality of host computers belonging to said message group, wherein each of said messages contains a payload portion and a portion that is used to identify said message group;

(4) aggregating said payload portions of said host messages received from said second subset of the plurality of host computers to create an aggregated message; and

(5) transmitting said aggregated message to said first subset of the plurality of host computers belonging to said message group;

wherein said aggregated message keeps the shared, interactive application operating consistently on each of said first subset of the plurality of host computers.

**'686 Patent, claim 5**.  A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:

(1) receiving a host message from one of the plurality of host computers belonging to a message group, wherein said host message contains a payload portion and a portion that is used to identify said message group;

(2) forming a server message using said payload portion of said host message;

(3) transmitting said server message to each of the plurality of host computers belonging to said message group; and

(4) suppressing said server message such that said one of the plurality of host computers which originated said host message does not receive said server message;

wherein said server message keeps the shared, interactive application operating consistently on each of the plurality of host computers belonging to said message group.

*'686 Patent, claim 12*.  A method for providing group messages to a plurality of host computers connected to a group messaging server over a unicast wide area communication network, comprising the steps of:

(1) communicating with the plurality of host computers using the unicast network and maintaining a list of message groups, each message group containing at least one host computer;

(2) receiving messages from a subset of the plurality of host computers, each host computer in said subset belonging to a first message group, wherein each of said messages contains a payload portion and a portion that is used to identify said first message group;

(3) aggregating said payload portions of said messages received from said subset of the plurality of host computers to create an aggregated payload;

(4) forming an aggregated message using said aggregated payload; and

(5) transmitting said aggregated message to a recipient host computer belonging to said first message group.

*'686 Patent, claim 14*.  The method of claim 12, wherein the unicast wide area communication network is at least a portion of the Internet, and said group messaging server communicates with said plurality of host computers using a session layer protocol.

*'686 Patent, claim 18*.  A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:

11

(1) receiving a host message from one of the plurality of host computers belonging to a message group, wherein said host message contains a payload portion and a portion that is used to identify said message group;

(2) forming a server message by using said payload portion of said host message; and aggregating said payload portion with the payload portion of a second host message received from another of the plurality of host computers belonging to said message group; and

(3) transmitting said server message to each of the plurality of host computers belonging to said message group;

whereby said server message keeps the shared, interactive application operating consistently on each of the plurality of host computers belonging to said message group.

## VI. CLAIM CONSTRUCTION

### A.    Agreed Terms

| Term to be Construed | Agreed Construction |
|---|---|
| "group messaging server" | A server or computer system with a network interface that maintains a set of message groups used by the host computers to communicate information between themselves.  The group messaging server must be capable of receiving messages from the host computers addressed to a message group and sending messages to the host computers that have joined the message group.  A group messaging server can process messages with or without aggregated payloads, and can allow for group membership to change very rapidly. |
| "message group" | A collection of one or more host computers that (1) have joined a particular group and (2) receive group messages addressed to that particular group. |
| "payload portion" | The part of a message that contains data item(s) conveying information. |
| "portion for identifying said first message group" | Any part of a message, sent by a host computer to a group messaging server, that identifies the message group of a receiving host computer. |
| "portion that is used to identify said message group" | Any part of a message, sent by a host computer to a group messaging server, that identifies the message group of a receiving host computer. |
| "creating . . . said first message group | A host computer sends a control message that creates a message group with at least one host computer as a member. |

12

| Term to be Construed | Agreed Construction |
|---|---|
| by sending a first control message" | |
| "create message" | A message creating a message group. |
| "joining . . . said first message group by sending control messages" | The method by which host computers become members of a particular message group by sending control messages. |
| "join message" | A message causing a host to become a member of a message group. |
| "session layer protocol" | A layer in the OSI reference model on top of the transport layer protocol. |

Dkt. No. 88 at Ex. A & B.

**B.    Disputed Terms**

**(i)  "Aggregating" and "Aggregated"**

These terms appear in asserted claim 1 of the '523 Patent and asserted claims 1, 3, 12 and 18 of the '686 Patent.

**(1)  The Parties' Positions**

The parties agree that the terms "aggregating" and "aggregated" share a common definition, which is central to the resolution of several disputed claim terms.  Joint Claim Construction Chart, Dkt. No. 88, Ex.  B at  3 (hereinafter "JCCCB"); Joint Claim Construction Chart, Dkt. No. 88, Ex.  A at  3 (hereinafter "JCCCA").  PalTalk proposes the definition, "to collect two or more data items together as a unit," and Microsoft proposes, "collecting and/or accumulating without changing."  *Id*.

As evident from the variation between the proposals, the parties agree that the essence of "aggregation" is *collecting* the claimed payload portions.  Also evident from

the proposals is that the parties' principal disagreement regards whether the claim term "aggregating/aggregated" allows any change to an incoming original payload.

### (2)  Construction

In considering the arguments of the parties, the Court begins its analysis by examining the intrinsic record and the parties' related arguments. *Philips v. AWH*, 415 F.3d at 1313.  PalTalk argues that the Microsoft's "without changing" limitation lacks support in the intrinsic record because the specification actually discloses embodiments that provide for changing the payloads. Dkt. No. 82 at 12-13.  The Court agrees with PalTalk that the specification supports "changed" payloads by disclosing "application specific processing functions" that "process the data in the message payloads and replace the data elements with the processed results.'" '523 Patent at 27:22-33.  This disclosure clearly teaches alteration to the payloads in that it expressly suggests processing "the *contents of the messages* that are received." *Id*. at 27:22-24 (emphasis added) ("Another extension to the invention is to define ULP server processes that perform specific application specific processing on the contents of the messages that are received.").  Microsoft argues that this processing disclosure is irrelevant because it is not expressly tied to either an aggregating or non-aggregating embodiment. Dkt. No. 80 at 14-15.  However, reading column 27 in the context of the remainder of the patent, the Court finds that the application specific processing technique applies to either aggregating or non-aggregating embodiments.  For example, the specification expressly teaches that "[t]he GMS can either process the message with or without aggregating their payloads." '523 Patent at 9:23-24.

The Court also agrees with PalTalk that disclosure of the compression embodiment ('523 Patent 24:32-37) suggests that the claims allow for alteration of items that are "aggregated."  Microsoft has countered that compression is irrelevant because the patent teaches that compression occurs after "aggregation." Dkt.  No.  80 at 17, *citing* '523 Patent 24:32-35 (emphasis Microsoft's) ("[t]his affords the opportunity ***within an aggregated payload*** of multiple payload items to apply a data compression method across the multiple data elements of the payload elements.").  However, Microsoft's argument is misdirected because its proposal is not limited to preventing payload changes during the initial action of aggregation.  Rather, if the Court were to adopt Microsoft's proposal, the claims would prohibit any changes to the payloads both before and after "aggregation."  Dkt.  No.  80 at 8 ("'Aggregating' must be construed in the context of the invention described in the Patents - combining the payloads of multiple messages into a single message for delivery without changing the payload data.").  In other words, using Microsoft's construction, an "aggregated payload" could never comprise "changed" payloads.  However, such a result is undermined by the very sentence Microsoft quotes regarding the compression embodiments, "[t]his affords the opportunity ***within an aggregated payload*** of multiple payload items to apply a data compression method across the multiple data elements of the payload elements." Dkt.  No.  80 at 17, *citing* '523 Patent 24:32-35 (emphasis Microsoft's).

The Court finds that the compression embodiments clearly provide for changes to the payloads as part of the "aggregated" payload.  For example, the specification expressly suggests compressing by "difference coding," which provides for each payload element to be individually encoded (i.e.  changed): "[t]he first data element in the first

payload item can be sent in uncompressed form with each subsequent data element being compressed using some form of difference coding method." '523 Patent at 24:37-40. Moreover, the same section of the specification also expressly suggests compression by "application specific coding," which means a compression technique that is suited to the application: "[i]t is also possible to make use of application specific coding techniques that take advantage of such knowledge to potentially achieve much higher coding efficiency." '523 Patent at 24:48-50. Thus, the teachings regarding compression strongly suggest that the payloads within "aggregated" payloads need not be identical to the received payloads.

Both parties argue that the disclosure related to fig. 6, 7 and/or 9 support their respective proposals. Dkt. No. 80 at 12; Dkt. No. 82 at 12. These examples use capital letters such as "P1" or "P2" to represent message payloads. '523 Patent at fig. 6 & 7. In particular, the symbols "P1" and "P2" are used to represent incoming payloads in separate messages sent to the GMS. *Id.* The same symbols, "P1" and "P2," are used as part of the representation of the "aggregated" payload as well. *Id.* Microsoft asks the Court to infer that the unchanged symbolism of "P1" as both an incoming and outgoing payload, mandates that there is no change in the underlying payload. The Court disagrees with Microsoft for several reasons. The cited figures and related text attempt to teach concepts about reducing the number of messages and the related computing workload. '523 Patent at 9:3-10:49; *Id.* at fig. 6, 7 & 9. These diagrams are not used to teach about the content of a payload or whether it can change. In addition, other diagrams in the patent clearly use identical symbols where the represented items are certainly not identical (*see, e.g.*, fig. 3 where double-circles represent routers but not the

same router).  Furthermore, the patentee's use of the letters "P1," "P2," etc.  are merely stand-in *representatives* for the payload portions.  This  symbolism might suggest that payloads retain some identity, but certainly does not unequivocally require that payloads never change.  Finally, the Court notes that the parties have agreed that "payload portion" means "the part of a message that contains data item(s) conveying information." JCCCA at 2; JCCCB at 2.  Thus, one would not *necessarily* expect a change in the symbolism (*e.g.* from P1 to P1') as long as the "data items conveying information" remain *represented* in the aggregated message.  A more stringent interpretation of these diagrams would be reading a meaning much different than the clear intent of the drafter.

Microsoft also argues that the claims themselves expressly call for identity between *received* payloads and *aggregated* payloads.  In particular, Microsoft submits that all the relevant independent claims call for the server to receive messages containing *payload portions*; and each claim subsequently calls for aggregating those very same payload portions.  Dkt.  No.  80 at 12.  Microsoft's position here suggests that any change (no matter how minor) to a "payload portion" materially changes its character so it is no longer a "payload portion."  However, as stated above, the parties have agreed that "payload portion" means "the part of a message that contains data item(s) conveying information." JCCCA at 2; JCCCB at 2.  Thus, for the purpose of claim semantics, identity is maintained between different references to "payload portions" as long as the original "data items conveying information" remain represented in the aggregated payload.  So, while the claim semantics may prevent complete dissolution of the original payloads, those semantics do not support the strict limitation Microsoft suggests.[3]

---

[3] The Court further notes that at least some of the asserted claims merely require "using" the payload portions in forming the aggregated message. *See, e.g.,* '686 Patent at Claim 5.  In these instances, any requirement of identity or similarity is obviated by the claims' semantics.

Microsoft also argues that the default echo suppression embodiment requires that a single payload portion must be removed from an aggregated payload thus demonstrating that payloads remain intact throughout aggregation.  In particular, Microsoft points out that when using echo suppression, "an individual, intact payload may be removed from the aggregated payload such that the host that sent that payload does not receive its own data when the GMS sends the aggregated message to the group members." Dkt.  No.  80, at 14, *citing* '523 Patent 23:2-5; fig.  7("This means that the host will not receive a copy of its own message to the group either as a single un-aggregated message or as a payload item in an aggregated message.").   The Court only agrees with Microsoft insofar as the default use of echo suppression *suggests* that payloads maintain enough identity so that they may be individually manipulated on the group messaging server.

The Court finds that the ordinary meaning of the terms "aggregating" and "aggregated" imposes some limitation on the change that may occur to received payloads in their evolution to part of an aggregated payload.  In both normal usage and within the context of the Patents, the word "aggregate" does not describe a situation where multiple items are irreversibly compounded.   Neither, however, does normal usage or the specification cause the word "aggregate" to connote a prohibition on all possible changes.  Rather, both the specification and the ordinary meaning of "aggregating/aggregated" suggest that constituent portions can change as long as sufficient identity is retained such that the result of "aggregating" is not an irreversible compound of the pre-existing portions.

Thus, the Court construes the terms "aggregated" and "aggregating" to mean ***"to***

***collect two or more data items together as a unit, however, where each data item***

***retains its identity and may be extracted from the unit."*** The Court notes that this

definition comports with the definition submitted by PalTalk but provides clarification in

view of the parties' positions.

The Court now turns to the *HearMe* litigation to explore whether factors exist that

mandate a result other than this Court's independent determination.   Judge Alsup

defined the term "aggregating, by said server in a time interval determined in accordance

with a predefined criterion, said payload portions of said messages to create an

aggregated payload," to mean that "the group messaging server aggregates the payloads

of ***all*** the messages it receives within a certain time interval to form an aggregated

payload.  The Payloads may be aggregated in any order." Dkt.  No.  80, Ex.  H at  9-10

(emphasis added).  Thus, in providing his holding, Judge Alsup did not address the

"without changes" issue presented to this Court.  However, in his Order, Judge Alsup

provided an otherwise instructive discussion:

> The claim language does not indicate whether individual
> payloads may be referred to individually once they are gathered
> into an "aggregated payload." The specification, however,
> suggests that the individual payloads retain their identity within
> the aggregated payload.  For example, under the heading
> "Message Delivery and Aggregation," the specification states
> that an individual payload item may be removed from an
> aggregated message: "assumed in the following description is
> that the GMS performs echo suppression when a host sends a
> message to a group that it belongs to.  This means that the host
> will not receive a copy of its own message to the group either as
> a single un-aggregated message or as a payload item in an
> aggregated message.  This is controlled by a ULP server process
> attribute that can be changed to stop echo suppression, but echo
> suppression is the default." (22:65 - 23:7).  Nothing in the
> specification suggests that an "aggregated payload" melds the
> individual payload items such that they cannot be separated.  The
> Court therefore concludes that the payload portions need not lose

their individual identity within the "aggregated payload."

Dkt. No. 82, Ex. H, 10.

While this Court is not bound to follow the *HearMe* case, PalTalk is not necessarily relieved of potential estoppels created by the statements and actions of its predecessor in the California litigation. In fact, HearMe did make statements to the California Court that are instructive for the resolution of this claim term. For appropriate consideration of those comments, the full context is reproduced here:

> **Mr. Guy:** You might get into that, your Honor. Yes.
>
> One last point – and this is on our side – is that there is no implication here that the two payloads are mixed.
>
> In other words, that the server the two payload portions, P1 and P2, are somehow combined in a single payload to form a payload that is then sent out. And that is an important point to us. Every example in the patent maintains the integrity of the payloads.
>
> **The Court:** Go back over that. Just repeat that last couple of sentences-the last point. Either jointly or individually – I didn't follow what you were trying to say.
>
> **Mr. Guy:** All right. In other words, I can refer to the payload portion. An aggregated payload portion, as the aggregated payload, which will include P1 and P2. But I can still refer to them individually, because the integrity of the two has been maintained.
>
> In all the examples in the patent there is nothing to suggest that the two payloads are somehow mixed and combined in a single payload.
>
> For example, suppose we're playing the game. I do a joy stick left move. Another player does a joy stick right. They don't go to the server and in combination they say, well, the joy stick stayed in place, and then that aggregated message is then transmitted out to the other host computers. There is no mixing of those two signals together to come out with a mixed signal. The integrity of the payload is maintained. P1 and P2.
>
> **The Court:** I don't – what is that – to avoid prior art? Is that –
>
> **Mr. Guy:** It helps, your Honor. It doesn't hurt.
>
> So, for instance, when the server receives the two payloads, the payload P1 and P2 are taken from the message, aggregated

together, and then they are combined or formed into the
aggregated message.
        **The Court:**  Okay.  All right.
        Are you finished on this group?
        **Mr.  Guy:**  Yes, your Honor

Dkt.  No.  80, Ex.  I at 243-5.

Considering HearMe's statements in their entirety, the Court finds that HearMe did not

argue that payloads must remain "unchanged."  Instead, HereMe merely argued that the

patent did not provide for the payloads to lose integrity – i.e.  to be dissolved into a single

item in a manner that negates the ability to retrieve the essential information for each

individual payload.  This point is made by Judge Alsup in his Order quoted above.  In

making this determination, the Court considers the extemporaneous nature of Mr.  Guy's

statement and Judge Alsup's reactions, including the quoted Order.  In particular, Mr.

Guy's most clear statement, and that which apparently provided adequate understanding

to Judge Alsup, was the example of the joy stick quoted above. Dkt.  No.  80, Ex.  I at

243-5.

Although the Court has found above that PalTalk is not bound to HearMe's

statements in the previous litigation since there was no final judgment, PalTalk is not

estopped for the additional reason that PalTalk's arguments are not "clearly inconsistent"

with HearMe's arguments before Judge Alsup.  *Id*.  at 1290-1291.

### (ii) "Aggregating, by said Server in a Time Interval Determined in Accordancewith a Predefined Criterion, said Payload Portions of Said Messages to Create an Aggregated Payload"

This claim term appears in asserted claim 1 of the '523 Patent.

### (1)  The Parties' Positions

PalTalk suggests that the Court define this term as "aggregating the payloads of

the messages sent by the plurality of host computers within a time interval defined by a

criterion specified prior to aggregation[4] to form an aggregated payload.  The payloads

may be aggregated in any order." JCCCA at 3.   Microsoft proposes a definition of "the

group messaging server aggregates the payloads of all the messages it receives within a

certain time interval to form an aggregated payload.  The payloads may be aggregated in

any order."  *Id.*

    There are two areas of disagreement in these respective proposals.  First, the

parties dispute whether an aggregated payload necessarily includes *all* of the messages

received by the GMS.  Second, the parties disagree on how to define the "criteria"

applicable to the claimed time period.

### (2)  Construction

    The Court first notes that Microsoft's proposal is almost identical to the

determination of Judge Alsup, who defined the exact same term to mean "that the group

messaging server aggregates the payloads of ***all*** the messages it receives within a certain

time interval to form an aggregated payload.  The Payloads may be aggregated in any

order." Dkt.  No.  82, Ex.  H at 10-11 (emphasis added).   Thus, on its face, Judge

Alsup's Order supports Microsoft's contention that "all" received messages should be

aggregated.  However, Judge Alsup's sole basis for this determination appears to have

been the claim language itself: "The claim language makes this clear by using the phrases

'said payload portions' and 'said messages'."  These phrases refer to all the messages

---

[4] PalTalk's original proposal was: "aggregating the payloads of the messages sent by the plurality
of host computers within a time interval defined by any criteria to form an aggregated payload."
In its Reply Brief, PalTalk conceded that "any criteria" could be interpreted as "a criterion
specified prior to aggregation."

sent within the time interval, and all the payloads contained within those messages." *Id*. at 11.

The Court first looks to claim 1 of the '523 Patent. *See Phillips v. AWH Corp.,* 415 F.3d at 1314 ("Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms."). PalTalk argues that the "claim language is clear that 'said payload portions' refers only to payload portions received from 'a plurality of host computers belonging to a first message group, ... said messages containing a payload portion ....' Aggregating payload portions from 'a plurality' does not require aggregating payloads from 'all the messages sent,' as the district court suggested." Dkt. No. 82 at 15. The Court agrees with PalTalk's dissection of the claim language in that the use of the phrase "a plurality of host computers belonging to a first message group" does not mean *all* "host computers belonging to a first message group." *See ResQNet.com, Inc. v. Lansa, Inc.*, 346 F.3d 1374,1382 (Fed. Cir. 2003) ("... 'each of a plurality of fields' ... does not carry the same meaning as 'every field.'"). The Court is thus constrained to conclude that Judge Alsup intended that the adjective "all" would only be applied to the claimed messages sent by the claimed "plurality of host computers," which is the correct reading of the claim syntax[5].

The Court also agrees with PalTalk that the specification suggests the same conclusion. (*see, e.g.*, '523 Patent at 9:38-46 discussing echo suppression, which necessarily excludes a payload from some aggregated messages: "As can be seen from the payloads that each host has received, each host has received the payloads from the

---

[5] To the extent Judge Alsup intended otherwise, this Court must disagree.

other three hosts.  Note that each host has not received a copy of its own original message.").

The Court turns now to PalTalk's contention that the "criteria" limitation means "a criterion specified prior to aggregation."  In particular, PalTalk argues that "[t]he difficulty with Microsoft's proposed construction is that it would require the aggregation time interval to be 'certain.'" Dkt. No. 82 at 18.  PalTalk explains that the Patents "make clear, however, that the time interval can vary from turn to turn," so a requirement of "certainty" is inappropriate.  *Id*.  PalTalk further explains that the specification describes two methods of determining the aggregation time interval: "Server Isochronous."  '523 Patent at 24:52 – 25:29 (the time period for aggregation is set by the group messaging server); and "Host Synchronous*."  Id*.  at 25:30 – 26:22 (time period is "based on the concept of a turn," and once all hosts have had their "turn," the aggregation period ends. *Id*.  at 25:36-37).  PalTalk also notes that dependent claim 3 "requires a time interval that is not certain itself, but that is still determined by a pre-defined criteria," thus claim 1 cannot require a time-certain interval.  Dkt.  82 at 18[6].

The Court finds that the claim expressly calls for ***pre-defined*** criteria, meaning criteria defined prior to the beginning of the claimed time interval.  *See Phillips v.  AWH Corp.,* 415 F.3d at 1314.  Furthermore, the Court finds that the time period need not be a certain amount of time, but merely "certain" in that the criteria are pre-defined.  Thus, to the extent it indicates otherwise, Microsoft's proposal is too limiting[7].

Thus, the Court construes the term "aggregating, by said server in a time interval

---

[6] Claim 3 depends from claim 1 and further limits the "time interval" of claim 1 as follows: "wherein said time interval corresponds to a time for said server to receive at least one message from each host computer belonging to said first message group." '523 Patent, claim 3.  PalTalk argues that claim 3 is the "turn" method for determining time interval and that the interval "can vary from turn to turn." Dkt. 82 at 18.

[7] Judge Alsup did not address issues related to the "certainty" of the time interval and the Court does not believe he intended that "certain" means a fixed amount of time.  *See* Dkt. 82, Ex. H at 10.

determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload" to mean "***the group messaging server forms an aggregated payload by aggregating the payloads of all the claimed messages it receives from the claimed plurality of host computers within a certain time period. The payloads may be aggregated in any order and the time period is certain in that it must arise from criteria specified prior to the beginning of the time interval***."

### (iii) "Aggregating Said Payload Portions," And "Aggregated Payload,"

The term "aggregating said payload portions" occurs in the '686 Patent, asserted claims 1, 3, 12 & 18. The term "aggregated payload" occurs in the '523 Patent, asserted claim 1, and in the '686 Patent, asserted claims 1 & 12.

### (1) Parties' Positions

These terms closely relate to those already discussed and analyzed by the Court and the parties. For that apparent reason, PalTalk's primary position is that no definition is required for either of the two terms. JCCCA at 3; JCCCB at 3. Microsoft proposes that the definition of "aggregating said payload portions" is "the server aggregates the payloads of ***all the messages it receives within a certain time interval*** to form an aggregated payload. The payloads may be aggregated in any order." *Id.(emphasis added)*. In addition, for the term "aggregated payload," Microsoft proposes the definition: "[a]n 'aggregated payload' may contain individual payloads in any order. It must contain ***all payloads from host messages sent during the time interval*** since the prior aggregated message." *Id.* (emphasis added). Microsoft's repeated reference to "all the messages/payloads" highlights the dispute for these terms as whether aggregation must include "all" payload portions received during a given time interval.

## (2) Construction

Having discussed the underlying issues extensively above, the Court declines to define this term.[8][9]  As noted above, the dispute here hinges on construction of the claim syntax and not the meaning of any claim term.  *See Phillips v. AWH Corp.,* 415 F.3d at 1314.  Since the issues may be resolved by correctly parsing the claim language of the implicated claims, the Court provides the following guidance regarding the claim syntax. The parties are instructed to tailor their trial arguments in accord.

***'686 Patent, claim 1:*** the aggregated payload comprises all the payload portions received in the claimed host messages from the second subset of host computers.  The claim term does not require a time interval.

***'686 Patent, claim 3:*** the aggregated message comprises all the payload portions received in the claimed host messages from the second subset of host computers.  The claim term does not require a time interval.

***'686 Patent, claim 12:*** the aggregated payload comprises all the payload portions received in the claimed host messages from the subset of host computers.  The claim term does not require a time interval.

***'686 Patent, claim 18:*** the server message is formed using both the payload portion of the claimed host message and the payload portion of claimed second host

---

[8] The Court addressed the "all" contention with respect to the term "aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload."  While different claims are implicated by the current terms, the parties dispute involves the identical issues, which the Court resolves in the same manner.  Furthermore, with respect to claim 1 of the '523 Patent, usage of "aggregated payload," the aforementioned claim term analysis addresses the identical term as part of the larger claim term of the identical claim.

[9] The Federal Circuit has stated that it is the district court's duty to resolve the disputes regarding the scope of a claim term.  *02 Micro International Lid. v. Beyond Innovation Technology Co., Ltd.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008).  However, the Federal Circuit has also noted that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."  *Id.*

message.  The claim term does not require a time interval.

### (iv)  "Aggregated Message"

The term "aggregated message" occurs in the '523 Patent, asserted claim 1, and in the '686 Patent, asserted claims 1, 3 & 12.

#### (1)  The Partes' Positions

PalTalk proposes that "aggregated message" means "A message containing destination data and an aggregated payload." JCCCA at 4.  Microsoft proposes the definition: "'Aggregated message' must include destination data and all the payloads of the host messages sent during the time interval since the prior aggregated message."

#### (2)  Construction

The parties' disagreement here rests solely on the definition of earlier-discussed term "aggregated payload."  In particular, the parties agree that an "aggregated message" contains destination data and an "aggregated payload," but the parties disagree regarding the definition of an "aggregated payload."  Since the Court has already resolved the parties' disputes with respect to the term "aggregated payload," the Court holds that an "aggregated message" means *"a message containing destination data and an aggregated payload*."[10]

### (v)  "Group Messages"

This term occurs in the '523 Patent, asserted claim 1 and in the '686 Patent, asserted claim 12.

#### (1) The Parties' Positions

While this term only appears in claim preambles, the parties agree that

---

[10] The Court notes that Judge Alsup discussed this exact term but that analysis does not add to the current dispute beyond the discussion above.  In particular, while Judge Alsup uses the word "all" to describe the payloads being aggregated, this Court has concluded that the claim language mandates a different result as explained above.

construction is appropriate.  The parties disagree as to the nature of the construction.

Microsoft urges this Court to adopt Judge Alsup's construction of "messages that are sent

to a collection of one or more host computers that comprise a message group." JCCCA at

1; JCCCB at 9.  Alternatively, PalTalk proposes that Microsoft misreads the meaning of

Judge Alsup's order and seeks to clarify with a different interpretation: "messages that

are sent to a collection of one or more host computers."  *Id.*; Dkt.  No.  82 at 21 ("Indeed,

in discussing the term 'aggregated message, the Alsup order explicitly states that "only

one host computer need receive the aggregated payload.'").

As evident from the proposals, the primary disagreement is whether or not the

recipient "one or more host computers," comprise a message group.  Thus, the parties

duel over Judge Alsup's language of "comprise a message group."  Microsoft interprets

this language to mean that group messages must be sent to an entire message group.

Rather than interpret the language, PalTalk simply submits a proposal absent the

contested phrase from Judge Alsup's Order.

### (2)  Construction

The Court turns first to the words of the claim.  *See Phillips v. AWH Corp.,* 415

F.3d at 1314 (explaining the importance of claim words in claim interpretation).  the

disputed term is used only twice, first in the preamble of the '523 Patent, claim 1; and

second, in the preamble of the '686 Patent, claim 12.  Both instances recite, "a method for

providing group messages to a plurality of host computers."  '523 Patent at claim 1, '686

Patent at claim 12.  Both claims require that the aggregated message be sent to "*a*

recipient host computer belonging to said first message group." *Id*.  Under the claim

language, only a single member of a group is required to receive a message.  Thus, the

the Court disagrees with Microsoft's proposal because it would require that messages are

sent to *all* of the one or more host computers in a message group.

In addition, the Court agrees with PalTalk that the disclosed embodiments providing for intersection of groups essentially negate Microsoft's proposal.  Dkt.  No. 82 at 21-21 *citing* '523 Patent at 10:62 – 11:25 (An "address list can also specify set operators to be performed between the sets of host ULP addresses defined ny the unicast addresses and logical groups.").  Microsoft argues that intersection of groups "is performed by the GMS but it is the host computer that determines which set operation the GMS will perform and which group of hosts it will perform the operation on." Dkt.  No. 80 at 25.  The Court finds Microsoft's counter-argument unavailing in that it merely focuses on the duties of the group messaging server, not the destination of group messages.

Finally, after complete review of Judge Alsup's Order, this Court does not believe that Judge Alsup intended that the words "comprise a message group" would be interpreted as the entire message group.  In defining "group messages," Judge Alsup declined to find that group messages implicitly include one or more ULP addresses because to do so would add a limitation to the claim.  Dkt.  No.  82, Ex.H at 7.  This reasoning indicates that Judge Alsup likely did not intend that group messages needed to be sent to entire groups.  Rather, in saying "comprise a message group," he likely meant that the recipients of the message belonged to a common message group, which is a concept wholly supported by the specification and the claim language.[11]

The Court holds that "group messages" means **_messages that are sent to a collection of one or more host computers belonging to a common message group._**

---

[11] To the extent Judge Aslup meant otherwise, this Court disagrees.

### (vi) "List of Message Groups"

This term occurs in the '523 Patent, asserted claim 1 and in the '686 Patent, asserted claim 12.

### (1) The Parties' Positions

The parties have agreed to a definition of "message group," leaving this disputed term well defined but for the nature of a properly construed "list." PalTalk submits that the term does not require further construction and Microsoft proposes that a "list" "is a stored recitation of the groups, and does not include the results of a server processing received application data inputs from clients." JCCCA at 2; JCCCB at 9-10.

### (2) Construction

Like the preceding term, the term, "list of message groups" occurs only in claim 1 of the '523 Patent, and claim 12 of the '686 Patent. Also like the prior term, both instances recite an identical phrase, "maintaining a list of message groups." Thus, the unambiguous literal words of both claims simply call for maintaining the list. Further, there is also no ambiguity regarding the absence of any semantic or linguistic relationship between Microsoft's proposal and the words of the claim[12]. Rather, Microsoft argues for the proposed negative limitation based on its strenuous objection to the claimed "list of message groups" having entries formed in a way that is not supported in the specification. Dkt. No. 80 at 26 ("the specification never teaches that a list of groups can be formed at the command of the server").

The Court finds that the absence of disclosure for a certain feature cannot justify a

---

[12] Microsoft does argue that the semantics of the larger claim context require the proposed result. Dkt. No. 80 at 26 ("The express language of claim 1 of the '523 Patent requires an existing 'list' of message groups and then specifies how messages sent to the GMS by one of those groups, designated the "first message group," are to be sent in aggregated form to a host computer 'belonging to said first message group.'"). However, this argument merely states that certain types of messages do not infringe the claim, which is not an issue ripe for resolution. The argument does not bear on an appropriate definition to the disputed term.

negative limitation that would exclude devices bearing that feature from the scope of the claims.  For example, if a patent relates to oatmeal cookies, the absence of disclosure regarding chocolate chips is not grounds for defining the oatmeal batter as necessarily excluding chocolate chips – thus resulting in non-infringement by simply adding chocolate chips to the otherwise infringing oatmeal batter.  Negative limitations of this type may be justified for clear disavowal, disclaimer or estoppel, but Microsoft has provided no support or argument for this restriction and the Court otherwise finds none. *Omega Engineering v. Raytek*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (declining to add a negative limitation without a specific basis).

Furthermore, the Court agrees with PalTalk that the specification teaches maintaining lists of groups that will change dynamically based upon programming on the GMS.  Dkt.  No.  82 at 23-25, *citing* '523 Patent at 16:15-56 and 10:12-17 ("[a]s players move about the three dimensional space of the game, [the] game will cause them to join and leave message groups as necessary").

Having resolved the parties' dispute[13], the Court declines to define the term "list" in addition to the already-defined term "message group."  However, for clarity, the Court emphasizes that the limitation "list of message groups" is indeed met if the accused article maintains an ordinary list of "message groups," as that term is defined by the parties' agreement.

### (vii)  "Suppressing"

This term appears in claim 5 of the '686 Patent.

### (1)  The Parties' Positions

For the term "suppressing," PalTalk proposes a construction of "to prevent from

---

[13] *See supra* fn. 9.

reaching," while Microsoft proposes "to eliminate; to prevent from reaching."  JCCCB at

8.  As evident, the parties' proposals are nearly identical, differing only in Microsoft's

suggestion of the clause "to eliminate."  By its own description, "Microsoft includes the

phrase 'to eliminate' in order to demonstrate that message suppression requires an

affirmative act by the server." Dkt. No.  80 at 23.  In other words, Microsoft proposes a

construction that limits how suppression may occur – *i.e.*, by elimination.

### (2)  Construction

The Court is generally not persuaded by Microsoft's argument because neither the

claim language nor anything else in the intrinsic record suggests that the manner of

suppression be limited to "elimination."  In particular, the Court disagrees with

Microsoft's characterization that PalTalk's construction is inconsistent with the

specification.  Dkt.  80 at 24.  According to Microsoft's own argument, "[f]igure 7 shows

only the *result* of suppression; the specification never details the actual mechanics of

echo suppression." Dkt.  No.  80 at 23-24 (emphasis Microsoft's).  Having acknowledged

the lack of disclosure regarding "the mechanics of echo suppression," Microsoft then

asks this Court to limit the claim to a specific type of mechanics, i.e.  "elimination."  *See*

*generally*, Dkt.  No.  80 at 23-24.  As Microsoft points out, the specification teaches the

concept of suppression by discussing that a host may not receive a copy of a previously

sent message or payload.  *Id*.  at  24, fn.  11, *citing*, '686 Patent 9:44-47 and 22:66 –

23:5[14]  In the context of the specification, the mechanisms for suppressing (preventing the

host from receiving that payload or message) are generally left to the choice of the

---

[14] "There are only two passages in the specification that describe echo suppression:
'(1). . . the specification notes 'that each host has not received a copy of its own original
message.  This is because the GMS has performed echo suppression.
(2) Also assumed in the following description is that the GMS performs echo suppression when a
host sends a message to a group that it belongs to.  This means that the host will not receive a
copy of its own message to the group either as a single un-aggregated message or as a payload
item in an aggregated message.'"

putative designer. Since the claim does not purport to reach the suppression mechanisms, the Court will not limit the claim to a particular type of suppression mechanism. *See Abbot Laboratories v. Novopharm Ltd.*, 323 F.3d 1324, 1330 (Fed. Cir. 2003) ("... courts must presume that the terms in a claim mean what they say, and otherwise compelled, give full effect to the ordinary and accustomed meaning of the claim terms.") (citations omitted); *See also Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

The Court, however, finds some merit in Microsoft's larger contention that suppression requires an affirmative act by the server. Dkt. No. 80 at 23. Although the Court finds that suppression does not necessarily require an affirmative act, the Court agrees with Microsoft to the extent that the "suppression limitation" is not met by *coincidental or accidental* failure of a message in reaching its destination (*e.g.* lost packets or hardware error). In such a case, there would be no suppression, but only a failure to reach the destination. Thus, suppression must occur by some volition such as design, intent or affirmative action. Nevertheless, the Court holds that use of the word "prevent" in the construction sufficiently embodies the requirement discussed. Finally, while the Court agrees with PalTalk's proposal, its application to the claim language is awkward and potentially confusing. For the clarity and convenience of the jury, the Court elects to define the larger term "suppressing said server message" as "***to prevent the server message from reaching at least one destination***."

### (viii) "Server Message"

This term appears in Claims 5 and 18 of the '686 Patent.

### (1) The Parties' Positions

With respect to the term "server message," the parties' dispute parallels their

positions with regard to the term "aggregating" or "aggregated." Under this variant of the dispute, PalTalk proposes a construction of, "a message formed by a server for delivery to one or more clients." JCCCB at 7. Microsoft proposes "[a] message formed by a server for delivery to one or more clients. In the context of the patent at issue, server messages contain an exact copy of the application-related data sent by clients to the server." *Id.*

### (2)    Construction

Only two disputed claims (5 and 18 of the '686 Patent) use the term "server message." The precise issues raised here are discussed earlier in this Order with respect to the terms "aggregated" and "aggregating." One subtle distinction is that claim 5 of the '686 Patent was not directly implicated in the earlier discussion because it lacks either of the "aggregating" or "aggregated" terms. The issues raised here and above for the "aggregating" terms do not arise from the disputed terms alone, but rather from Microsoft's position that the proposed construction is required in light of the specification and the context of the claims. Dkt. No. 80 at 22 ("Both claims 5 and 18 of the '686 Patent state that a 'server message' is formed using a host message payload; the only difference between the claims in this respect is that claim 18 involves forming a server message out of more than one received host payload. Thus, a 'server message' must contain one or more host payload(s)."). As a result, the earlier discussion applies to both claim 5 and claim 18 and the parties are referred thereto for a thorough discussion.

The Court notes that both claims 5 and 18 call for forming a server message by merely *using* received payload portions. However, as discussed above, this particular wording clearly does not require "unchanged" or "exact copies" of the payload portion, but merely that the received payload portions are "used."

34

Thus, the Court construes the term "server message" to mean "*a message formed by a server for delivery to one or more group members*."

### (ix)  "Shared Interactive Application"

This term is used in claims 1, 3, 5, and 18 of the '686 Patent.

#### (1)  The Parties' Positions

PalTalk proposes that the term means "application software operating on multiple host computers, the host computers dynamically sending messages at a rapid rate resulting in responses by the software." JCCCB at 1.  Microsoft proposes, "A software program that carries out some useful task and that is run by two or more peers on a network, where the peers' interactions with the computer are time-dependent.  In the context of the Patents at issue, the optional GMS is not required for a shared interactive application to execute correctly, and it does not itself participate in the application."  *Id*.

The parties mainly disagree on issues relating to time dependence and the potential participation of the GMS in the "shared interactive application."

#### (2)  Construction

Microsoft argues for its "time-dependent" limitation because the "background of the invention" provides: "[i]nteractive applications such as games control the speed of their interaction with the user through an internal time base.  The application uses this time base to derive rates at which the user input is sampled, the screen is redrawn and sound is played." Dkt.  No.  80 at  27, quoting '686 Patent at 1:23-27.  Microsoft explains that "the rate of interaction between peers depends on an application's internal time base, which is precisely the construction offered by Microsoft and resisted by PalTalk."  Dkt. No.  80 at 27.  The Court disagrees with Microsoft's proposal regarding time-dependence because the time based references in the background of the patent are not clearly

associated with the disputed term and do not speak to the essence of that term. Microsoft's proposal regarding time-dependence is a possibility but not a necessity for a "shared interactive application."

Microsoft also argues that the specification "makes clear that a shared interactive application is necessarily distinct from a group messaging server (GMS)." Dkt. No. 80 at 28. The Court has reviewed Microsoft's many citations on this point and finds no persuasive reason to exclude the GMS from participation in the shared interactive application. In fact, the Court finds that the disclosure regarding "application specific processing" suggests the opposite. '686 Patent at 27:21-34 ("Another extension to the invention is to define ULP server processes that perform specific application specific processing on the contents of the messages that are received. A variety of different application specific processing functions can be defined and implemented. . . . These functions could process the data in the message payloads and replace the data elements in the payloads with processed results. Separately, or in combination with processing the message payloads, the processing could store either raw message payload data in the application specific state storage area or could store processed results.").

PalTalk argues for its "rapid rate" limitation based upon the Patents' statement that "the invention" will "dynamically" exchange information and "respond quickly" to keep the application "operating consistently." Dkt. No. 82 at 27, *citing* '686 Patent at 8:26-30 ("The present invention relates to facilitating efficient communications between multiple host computers over a conventional wide area communications network to implement an interactive application such as a computer game between multiple players. In such an application, the hosts will be dynamically sending to each other information that the other hosts need in order to keep the interactive application operating

consistently on each of the hosts."). Further, PalTalk points out that the specification decribes data exchanges as "10 times per second,[15]" "high frequency,[16]" "a regular and high rate,[17]" "eight to ten times per second,[18]" and a "rapid rate.[19]" Dkt. No. 82 at 28. Similar to Microsoft's time-dependent argument, the Court finds that PalTalk's proposal as to "rapid rate" is not clearly associated with the disputed term, but is rather simply a possibility for a "shared interactive application."

In reviewing the specification, the Court finds that the concept of a "shared interactive application" is introduced in the "background of the invention" section of the '686 Patent:

> With so many computers on a single world-wide network, it is desirable to create interactive networked applications that bring together many people in a shared, networked, interactive application. Unfortunately, creating such ***shared, networked, interactive applications*** runs into the limitations of the existing network technology.

'686 Patent at 1:56-61 (emphasis added).

The term "shared, interactive application" is used in the claim preambles to set a context for the claims. *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[A] claim preamble has the import that the claim as a whole suggests for it."). As such, this Court does not interpret the patent's use of "shared interactive application" as having material meaning beyond the plain and ordinary meaning of the claim words and the introductory paragraph quoted above. Thus, the Court concludes that the meaning of "shared interactive application" is fully disclosed in the quoted introductory paragraph – all other characterizations for the term

---

[15] '686 Patent at 2:62-64.
[16] *See, e.g.*, '686 Patent at 4:21-22 (occurring "at a regular and high rate")
[17] *Id.*
[18] '686 Patent at 4:23-25
[19] *Id.* at 22:62-66.

being mere options.  The Court defines "shared interactive application" as **_software operating on multiple host computers that provides for sufficient interaction to allow users of the hosts to share an application or experience._**

### (x)  "Wherein/whereby said Aggregated/Server Message keeps the Shared Interactive Application Operating Consistently"

This term is used in claims 1, 3, 5, and 18 of the '686 Patent.

### (1)  The Parties' Positions

PalTalk proposes, "[w]herein the aggregated/server message maintains a consistent state for the shared, interactive application operating on multiple host computers." JCCCB at 4.  Alternatively, Microsoft proposes, "[t]he aggregated/server message contains information that is necessary to reliably and in a time-dependent manner maintain the operation of the shared interactive application such that the application is synchronized across all clients in the group." JCCCB at 4.  The parties incorporate their constructions for "aggregated message,"  "server message" and "shared interactive application" into the construction of this term.  In addition to the disputes discussed in the incorporated terms, the parties dispute the meaning of "operating consistently."

### (2)  Construction

PalTalk argues that much of the proposed term is already defined and that only slight clarification is required to point out that "operating consistently" refers to "maintaining a consistent application state between the interactive applications operating on the multiple host computers." Dkt.  No.  82 29.  Microsoft responds arguing that the term requires the exchanged messages "contain information that is necessary to .  .  . maintain the operation of the shared interactive application." Dkt.  No.  80 at 29. Microsoft supports this contention *citing* to the specification, which states that messages

sent between hosts contain "information the other hosts need in order to keep the interactive application operating consistently on each of the hosts." '686 Patent at 8:27-29.  The Court doesn't find that either of the parties' proposals improve upon the claim language.

The Court also disagrees with Microsoft's argument that "reliability" should be incorporated in the term's construction because it is essential to the patent's purpose. Dkt.  No.  82 at 29, citing '523 Patent at 26:54 ("TCP/IP is a connection oriented protocol which provides reliable end-to-end transport.").  The Court finds that the cited "reliability" does not relate to claimed phrase "operating consistently."

Finally, the Court disagrees with Microsoft that "synchronization" is necessary to convey the "strict time requirements." *see* Dkt.  No.  82 at 29.  Although the Court agrees with Microsoft that the specification indicates that synchronization is desirable[20], the Court also agrees with PalTalk that "synchronization" is not *necessary* to "operating consistently."

Having resolved the parties' disputes[21], the Court declines to define this term and instructs the parties to refer to this Order in their prospective trial arguments.

---

[20] "It is not a requirement in networked applications to keep all of the hosts precisely synchronized, only that the application state is consistent." '523 Patent at 26:18-21;  "When a player provides a new input on their system, *it is desirable* for that input to immediately affect the game on all of the other players systems."  '686 Patent at 3:12-14 (emphasis added).
[21] *See supra* fn. 9.

## VII.  CONCLUSION

Accordingly, the Court hereby **ORDERS** the claim terms construed in accordance herewith.

**SIGNED this 29th day of July, 2008.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE