```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF TEXAS
 2                     MARSHALL DIVISION

 3   PALTALK HOLDINGS          *   Civil Docket No.
                               *   2:06-CV-367
 4   VS.                       *   Marshall, Texas
                               *
 5                             *   March 10, 2009
     MICROSOFT CORPORATION     *   2:54 P.M.

 6
                     TRANSCRIPT OF EXHIBIT HEARING
 7          BEFORE THE HONORABLE JUDGE CHAD EVERINGHAM
                   UNITED STATES MAGISTRATE JUDGE

 8

 9

10

11   APPEARANCES:              MR. JOHNNY WARD
                               Ward & Smith
12                             P.O. Box 1231
                               Longview, TX  75606
13
                               MS. BROOKE TAYLOR
14                             MR. MAX TRIBBLE
                               Susman Godfrey, LLP
15                             1000 Louisiana, Suite 5100
                               Houston, TX   77002
16

17
     FOR THE DEFENDANT:        MR. HARRY LEE GILLIAM, JR.
18                             Gillam & Smith
                               303 South Washington
19                             Marshall, TX   75670

20

21
     COURT REPORTER/:          MS. SUSAN SIMMONS, CSR
22   TRANSCRIBER               Official Court Reporter
                               100 East Houston, Suite 125
23                             Marshall, TX   75670
                               903/935-3868
24

25   (Proceedings recorded by electronic recording equipment,
     transcript produced on CAT system.)
```

P R O C E E D I N G S

THE COURT:  The question is to the admissibility of the Sitrick patent license which is DX-260. The question being whether it is admissible given the Court's ruling on Plaintiff's Motion in Limine 23 which excludes licenses granted under a threat of litigation.

And the Court, this afternoon, was furnished copies of several dockets -- or documents, rather, from the Plaintiff's counsel that the Plaintiff contends show that the license agreement at issue was entered into under a threat of litigation.

Do I got the dispute?

MR. WARD:  You have got the dispute.

THE COURT:  Proceed.

Tell me what you need to tell me.

MR. WARD:  All right, Your Honor.  First, I apologize for the unorthodox way in which we have been presenting these arguments to you, you don't get the benefit of a response and haven't had the benefit of briefing and another response certainly with this issue, but it's the way that we're -- the method of operation that we've been told to get down here and have you resolve this.  So ...

THE COURT:  I'm adaptable.

MR. WARD:  All right.  We're trying to adapt as

well, Your Honor.

As you know, you granted PalTalk leave to take a 30(b)(6) to determine whether or not this Sitrick license was entered into under threat of litigation.

We received these documents after you issued that order which we were of the opinion showed on the face that the license was entered into under a threat of litigation.

Of course, we have not had the opportunity until now to present the documents to the Court, and we're still of that belief.

And I'll walk through them very briefly.  What we did was number the documents, 1 through 5 in a handwritten fashion and highlighted what we thought were -- or I should say what I thought were relevant sections of some on the correspondence between Microsoft and Mr. Sitrick's counsel, and I assume that the Court has had an opportunity to review those, and I certainly don't want to waste your time reading them to you.

But starting off with the first letter, May 25, 1999, there is reference to Mr. Sitrick's other lawsuits, and this is in the context of writing Microsoft to determine whether or not they might be willing to take a license to the Sitrick patent, and attached to it is the licensing program, Mr. Sitrick's licensing program.  And if you look, there are

1    four items that get attached:  An executive summary, a copy of

2    the patent, and opinions from Judge Williams in the litigation

3    in which Mr. Sitrick had been engaged with some of Microsoft's

4    competitors.  Then you have got correspondence coming back

5    from Microsoft, the third tab, where they're disputing whether

6    or not there is infringement.  And they start -- they note

7    that there's litigation involving Electronic Arts, and you see

8    Ms. Quan referenced in the last paragraph, that she's the one

9    now handling this matter.

10            And I do not have Ms. Quan's declaration with

11   me, I don't know if the Court has it handy, where she gave a

12   declaration stating that the Sitrick license was not entered

13   into under a threat of litigation.

14            About a year goes by and I guess the Electronic

15   Arts litigation progresses over a year and Mr. Sitrick's

16   counsel writes to update Microsoft on that litigation, to let

17   Microsoft know that that lawsuit has settled.

18            And then the last item that we tabbed was the

19   license agreement that was entered into between Microsoft and

20   Mr. Sitrick where they gave a covenant not to sue.

21            So, again we believe that these documents on

22   their face demonstrate that the Sitrick license was entered

23   into under a threat of litigation.

24            We were not attempting to inquire of Ms. Quan

25   in lieu of the deposition, but we think that Microsoft's

1  credibility is now squarely in dispute because of the

2  statements that she made in that declaration as this Court has

3  heard many times, lawyers argue that a party's credibility is

4  always in dispute, and we think that by designating her as the

5  corporate representative, even if these documents do come in,

6  if the Court says, you know what, Mr. Ward, I disagree with

7  you, they are not under a threat of litigation, the documents

8  come in.  I think that we're -- we -- maybe it's outside the

9  presence of the jury given your other ruling, would be

10  entitled to question her about the statements that she made in

11  her declaration to the Court about these documents.  And

12  certainly inquire of Microsoft's damages expert about the

13  weight that he gave these licenses in lieu of the Court's

14  clear rulings about the fact that experts are not to rely upon

15  experts -- or to rely upon licenses that are entered into

16  under a threat of litigation, and we should be entitled to

17  inquire of their expert at a minimum as to whether or not he

18  was aware of the contents of Plaintiff's Exhibit No. 684 when

19  he relied upon the Sitrick license to form the basis.  I said

20  his, of her opinion.

21            THE COURT:  Okay.  Let me ask -- I have a few

22  questions.

23            MR. WARD:  Okay.

24            THE COURT:  The first letter looks like --

25  well, my first question is other than the reference to the

1  patentee's other lawsuit, is there any statement in any of the

2  documents where the patentee made an express threat of

3  litigation against Microsoft?

4            MR. WARD:  Absolutely not, they never said, if

5  you don't take a license, we're going to sue you.

6            THE COURT:  Okay.  Is there any indication in

7  any of the documents that Microsoft ever retained outside

8  counsel?

9            MR. WARD:  I haven't seen that from the

10  documents, the documents that we have, no, sir.

11            THE COURT:  Okay.  And were any of the

12  documents -- and I'm saying that my review of them is that

13  they weren't, but I could have missed something this

14  afternoon, were any of them ever marked under 408 as

15  confidential settlement type agreements?

16            MR. WARD:  They were -- they are not.  But

17  there is the confidentiality agreement that is entered into

18  before they get into these negotiations, and I looked at those

19  closely and I didn't see that the -- any reference that the

20  negotiations are for compromise only, to compromise a dispute.

21  Although I think it is having the same import without

22  referencing 408, and of course Mr. Sitrick was careful not to

23  say if you don't take a license, we're going to sue you, but

24  he attached the information that said we've sued everybody

25  else, and I think the roadmap was clear to Microsoft.

1    THE COURT:  And did he ever provide evidence of

2  Microsoft's infringement other than the statements in here,

3  the lists of products that he believed were covered by the

4  patent claims?

5    MR. WARD:  I don't believe there's anything in

6  writing, but if you'll look at Mr. Bocianowski's -- it's the

7  third -- third letter, there were clearly some discussions

8  that took place about Mr. Sitrick's more specific theory of

9  infringement because he talks to him about his theory of

10  contributory infringement with Microsoft disagrees with that

11  assessment.  So, there was clearly some type of assessment

12  given to Microsoft about the specific -- I say clearly -- it

13  seems apparent that there were some additional discussions

14  outside of these letters that took place with respect to what

15  Mr. Sitrick's theory of infringement was with respect to

16  Microsoft.

17    THE COURT:  Okay.  And I also -- I didn't see

18  any -- I think you may have just referenced this, any cease

19  and desist type directives from Mr. Sitrick or his counsel.

20    MR. WARD:  There were not, but there also was

21  never a promise not to sue, you know, when they were writing

22  Microsoft saying, look, we're not going to sue you, but we

23  just want to talk to you about taking a license.  In fact, the

24  contrary, they were silent as to that and attached information

25  that indicated that they had sued a number of other

1   competitors who had not taken licenses, I guess, initially

2   under a voluntary basis without a lawsuit.  In fact, there is

3   no reference to any licensee taking a license without a

4   lawsuit being filed.

5                   THE COURT:  Okay.  All right.  Thank you.

6                   Mr. Gillam?

7                   MR. GILLAM:  Gil Gillam on behalf of Microsoft,

8   Your Honor.  And I do have a copy of Ms. Quan's declaration if

9   the Court does not have it or if the Court needs to see it.

10                  THE COURT:  Pass it up.

11                  (Counsel complies.)

12                  THE COURT:  Okay.  Go ahead, Mr. Gillam.

13                  MR. GILLAM:  Your Honor, the issue as to the

14  exclusion of the patent license appears to be under the case

15  law as to when the dispute is crystallized to the point of

16  threatened litigation.

17                  As the Court has noted, and throughout the

18  comments of Mr. Ward, there is not one statement in any one of

19  these documents where actual litigation is threatened.  There

20  is a recitation of other litigation, and there is an

21  invitation to come meet and discuss a paid up license, but

22  that is as far as it goes.

23                  And I think what is also instructive is the

24  time frame.  Apparently, and I didn't catch it until Mr. Ward

25  brought it up, but you have got a year's time frame between

1   the time these things begin and the time that apparently it

2   ended.  Nowhere in that period of time from these documents

3   does it --

4              THE COURT:  Actually it's over two years it

5   looks like from May of 1999 and it looks like it culminated in

6   an agreement that was reached on or about early October of

7   2001.

8              MR. GILLAM:  Well, certainly there was no

9   litigation instituted.  There is no letter which threatens any

10  institution of litigation during that time period at all.

11  There is only references of other litigation.  And none of the

12  documents that have been provided, they have been examined,

13  show a threat of litigation or anything approaching a

14  crystallization of that issue.

15             So, just very briefly, Your Honor, we do not

16  believe that it shows a threatened litigation.  Obviously a

17  license was granted, there is boilerplate language in there

18  which says that there is going to be a covenant not to sue for

19  any claim or claims that might be made.

20             We simply do not know from these documents and

21  the discussions whether or not there was ever a claim.  These

22  documents simply do not prove threatened litigation.  And that

23  is our position.

24             THE COURT:  Well, hold on just a second.  Your

25  position is that there wasn't an expressed threat.

1        MR. GILLAM:  There is not an expressed threat,

2  Your Honor.

3        THE COURT:  Well, I know, but as I understand

4  the other side's argument is that there could be a veiled

5  threat at least at a minimum referencing other -- you know, I

6  mean, there's a licensing program here, has I thought three or

7  four documents in it, at least two of them were court

8  opinions.

9        MR. GILLAM:  Absolutely, Your Honor.  And not

10  only are there court opinions, but there are also other

11  references through the other letters to this other litigation.

12  And, in fact, a recitation about a year down the road saying

13  that, by the way, we have settled some other litigation.  I

14  don't think that constitutes a veiled threat.

15        As attorneys, we all know how to write demand

16  letters, we all know how to write letters which point out very

17  clearly to the other side what our intent is.  I do not

18  believe that these letters ever amount to anything other than,

19  come let us visit together and see if we can work something

20  out.  And eventually that's what occurred between -- between

21  these two parties.

22        Certainly -- and if there was any veiled --

23  anything that is veiled there, Your Honor, I do not believe it

24  reaches the point of crystallization of a threat.  I don't

25  really believe there is anything that is even a veiled threat

1  of litigation, but certainly nothing that brings it to that

2  level.

3                THE COURT:  All right.  Thank you.

4                Reply?

5                MR. WARD:  Your Honor, I think you have covered

6  the issue.  I'm happy to answer any other questions that you

7  have got.  All I know is pretty much what's in the documents,

8  and how we view that as not geehawing with Ms. Quan's

9  declaration.

10               THE COURT:  Okay.  All right.  I will give you

11  a ruling on it as quickly as I can.

12               MR. WARD:  Thank you.

13               MR. GILLAM:  Thank you.

14               THE COURT:  We're in recess.

15               COURT SECURITY OFFICER:  All rise.

16               (Court adjourned.)

17          *      *      *      *      *

18

19

20

21

22

23

24

25

1

2

3

4

5                        C E R T I F I C A T I O N

6

7               I HEREBY CERTIFY that the foregoing is a

8    correct transcript from the electronic recording of the

9    proceedings in the above-entitled matter to the best of my

10   ability.

11

12

13

14

15   _____          _____
     SUSAN SIMMONS, CSR                         Date
16   Official Court Reporter
     State of Texas No.:  267
17   Expiration Date:  12/31/10

18

19

20

21

22

23

24

25